IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

SHERYL JOHNSON, Administrator of )
the Estate of Chris Johnson, )
Deceased, )
)
      Plaintiff, )
)
      v. )   No. 11-cv-1400
)
DECATUR JUNCTION RAILWAY, CO., )
)
      Defendant. )

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment (d/e 36) (Motion).  The parties consented to have this case heard before this Court.  <u>Consent to the Exercise of Jurisdiction by a United States Magistrate Judge and Reference Order entered March 23, 2012 (d/e 13)</u>.  The parties have thoroughly briefed this matter.  Therefore, Defendant Decatur Junction Railway, Co.'s (DJR) request for oral argument is denied.  For the reasons set forth below, the Motion is DENIED.

### BACKGROUND

On November 2, 2011, Chris Johnson filed this action against DJR, alleging a claim under the Federal Employer's Liability Act, 45 U.S.C. § 51

(FELA).  Complaint (d/e 1).[1]  Chris Johnson alleged that on September 23, 2010, his hearing was injured while he was employed by DJR to repair a railroad locomotive operated by DJR.  Chris Johnson subsequently died during the pendency of this case, and Plaintiff Sheryl Johnson (Johnson), Administrator of the Estate of Chris Johnson, deceased, was substituted in as Plaintiff.  Text Order entered July 30, 2013.

Johnson moves for partial summary judgment on the grounds that DJR violated safety regulations for protection of employees' hearing promulgated by the Federal Railroad Administration (FRA), 49 C.F.R. § 227.101(b).  Part 227 of the FRA regulations set forth rules for conserving the hearing of train employees.  Section 227.101(a) provides that Part 227 applies only to "train employees," as defined in that subsection.  49 C.F.R. § 227.101(a).  Section 227.101(b) provides:

> (b) Occupational noise exposure and hearing conservation for employees not covered by this subpart is governed by the appropriate occupational noise exposure regulation of the U.S. Department of Labor, Occupational Safety and Health Administration located at 29 CFR 1910.95.

---

[1] The Complaint also named former Defendant Pioneer Railcorp., Inc. Complaint (d/e 1). On February 2, 2012, Chris Johnson filed an Amended Complaint substituting Pioneer Railroad Services, Inc. (Pioneer Services), for Pioneer Railcorp., Inc. as the second Defendant. Amended Complaint (d/e 7). On April 13, 2012, the Court dismissed the claims against Pioneer Services with prejudice based on the stipulation of the parties. Text Order entered April 13, 2012. Johnson has moved to set aside the stipulation and amend his Amended Complaint to rename Pioneer Services as a defendant and add additional claims under FELA. Plaintiff's Motion to Alter April 13, 2012 Stipulation & Order and for Leave to File Second Amended Complaint (d/e 33) (Motion to Alter). Johnson's Motion to Alter is pending.

49 C.F.R. § 227.101(b).  The parties agree that Chris Johnson was not a train employee subject to Part 227 on September 23, 2010.  Thus, Chris Johnson was covered by the noise exposure and hearing conservation regulations promulgated by the U.S. Department of Labor, Occupational Safety and Health Administration (OSHA).  Johnson presents evidence that DJR violated these regulations.  See Motion, Statement of Undisputed Fact, ¶¶ 30-39.

Based on this evidence and applicable law, Johnson asks the Court to find that DJR was negligent per se and that DJR is barred from asserting contributory negligence as a defense.  Under FELA, a railroad common carrier employer's violation of certain safety regulations is negligence per se.  Coffey v. Northeast Illinois Regional Commuter R. Corp. (METRA), 479 F.3d 472, 477 (7th Cir. 2007).  Furthermore, the employer is barred from asserting contributory negligence as a defense.  45 U.S.C. § 53.  Johnson asks this Court to determine as a matter of law that DJR's violation of applicable noise exposure and hearing conservation regulations constituted negligence per se and precludes DJR from asserting contributory negligence as an affirmative defense.

Resolution of the Motion depends on whether DJR violated OSHA regulations or FRA safety regulations.  If the applicable regulations

promulgated under FRA's authority to regulate railroad safety, then a violation of the noise regulations would be negligence per se and would preclude the affirmative defense of contributory negligence.  See e.g., Crane v. Cedar Rapids & I. C. Ry. Co, 395 U.S. 164, 166 (1969); Coffey, 479 F.3d at 477; Ries v. National R.R. Passenger Corp., 960 F.2d 1156, 1159 (3$^d$ Cir. 1992).

If the applicable regulations are promulgated under OSHA's authority to regulate workplace safety generally, then the Court must address whether a violation of those regulations triggers the FELA rules of negligence per se and preclusion of a contributory negligence defense. The Circuit Courts of Appeals have split on the effect of violations of OSHA regulations in FELA cases.  See Practico v. Portland Terminal Co., 783 F.2d 555, 263 (1st Cir. 1985) (OSHA regulation violation triggers negligence per se and no contributory negligence defense rule in FELA cases); but see Jones v. Spentonbush-Red Star Co., 155 F.3d 587, 596 (2$^d$ Cir. 1998) (OSHA regulation violation does not trigger negligence per se and no contributory negligence defense rule in FELA cases); Robertson v. Burlington Northern R. Co., 32 F.3d 408, 410 (9th Cir. 1994) (same); Ries, 960 F.2d at 1164-65 (same); Albrecht v. Baltimore & Ohio R. Co., 808 F.2d

329, 332-33 (4th Cir. 1987) (same).  The Seventh Circuit has not ruled on the matter.

The applicable regulations in this case were promulgated under OSHA's authority to regulate workplace safety generally and not under the FRA's authority to regulate railroads, including railroad safety.  Congress established OSHA to regulate workplace safety throughout the economy.  See 29 U.S.C. § 651.  Congress, however, also established certain agencies to regulate specific industries.  The FRA is one such agency.  The FRA is authorized to regulate railroads, including workplace safety.  49 U.S.C. § 20103(a); 49 C.F.R. § 1.89.  Congress recognized that conflicts could arise between OSHA standards and safety regulations promulgated by agencies such as FRA.  Congress provided if agencies such as FRA "exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health," then such regulations preempt the general OSHA regulations.  29 U.S.C. § 653(b)(1); see Association of American Railroads v. Department of Transp., 38 F.3d 582, 587 (D.C. Cir. 1994).

The FRA initially attempted to promulgate safety regulations under a "territorial approach" that would govern all aspects of the railroad industry.  In 1978, FRA terminated this rulemaking.  Railroad Occupational Safety

<u>and Health Standards; Termination</u>, 42 Fed. Reg. 10583 (March 14, 1978). The FRA determined that it lacked the resources to regulate all aspects employee workplace safety. In doing so, FRA issued a Policy Statement setting forth the relationship between FRA safety regulations and OSHA safety regulations. The FRA explained that it decided to exercise its regulatory authority to regulate workplace safety only in the area of railroad operations:

> As is reflected by the termination notice set forth above, FRA has decided to focus its resources and energies for the immediate future on the safety of railroad operations. As used herein, "railroad operations" refers to the movement of equipment over the rails.

42 Fed. Reg. at 10585. The FRA explained that it would not preempt OSHA's jurisdiction over workplace safety in other parts of the railroad industry:

> As noted above, FRA has determined that a territorial approach to the exercise of its statutory jurisdiction over railroad safety . . . would deplete energies and resources better devoted to the safety of railroad operations. If FRA were to address all occupational safety and health issues which arise in the railroad yards, shops, and associated offices, the agency would be forced to develop a staff and field capability which, to an extent, would duplicate the capability already possessed by OSHA. In view of this situation, FRA recognizes that OSHA currently is not precluded from exercising jurisdiction with respect to conditions not rooted in railroad operations nor so closely related to railroad operations as to require regulations by FRA in the interest of controlling predominant operational hazards.

42 Fed. Reg. at 10587. Thus, FRA limited the exercise of its authority to regulate safety to the movement of equipment over rails. OSHA regulations applied elsewhere in the industry, including workplace safety for mechanics such as Chris Johnson.

In 2006, the FRA issued the final rule promulgating 49 C.F.R. Parts 227 and 229 to regulate occupational noise exposure and hearing conservation. <u>Occupational Noise Exposure for Railroad Operating Employees</u>, 71 Fed. Reg. 63066-01 (October 27, 2006). In doing so, the FRA recognized the demarcation between FRA safety regulatory jurisdiction and OSHA jurisdiction set forth in its 1978 Policy Statement:

> In 1978, FRA issued a Statement of Policy setting out the respective areas of jurisdiction between FRA and OSHA in the railroad industry. See 43 FR 10583 (March 14, 1978). In that Policy Statement, FRA drew the jurisdictional line between "occupational safety and health" issues in the railroad industry and work related to "railroad operations," with FRA exercising authority over railroad operations and OSHA over occupational safety and health issues.

71 FR at 63067. The FRA promulgated § 227.101 to follow that demarcation. Section 227.101(a) limited the applicability of Part 227 to "train employees," i.e., those employees involved in railroad operations. Section 227.101(b) stated that all other employees were subject to OSHA

regulations.  The FRA explained that these other employees were outside the scope of the FRA regulation:

> Section 227.101(b) provides that all other railroad employees who are exposed to noise hazards but are outside the scope of this regulation will continue to be covered by OSHA's noise standard, which is located at 29 CFR 1910.95.

71 FR at 63085.  The FRA followed its Policy Statement and limited the exercise of its regulatory authority to railroad operations.  Section 227.101(b) reflects the FRA's decision to leave all other safety regulation to OSHA, including regulation of mechanics such as Chris Johnson.  Therefore, the evidence presented by Johnson in this Motion tends to show that DJR violated OSHA safety regulations, not FRA regulations.

Johnson argues that § 227.101(b) incorporated OSHA regulations by reference into the FRA regulations.  The Court disagrees.  Section 227.101(b) reflects FRA's decision not to regulate safety in areas outside of railroad operations.  Section 227.101(b) leaves that regulation to OSHA.  The FRA Policy Statement and the explanations of the final rule in 2006, quoted above, demonstrate that the FRA decided not to regulate outside of railroad operations.  Thus, OSHA regulations applied to Chris Johnson, not FRA regulations.  Therefore, the issue presented is whether a violation of OSHA safety regulations triggers the FELA requirements to hold the

employer negligent per se and to deny the employer the opportunity to raise the affirmative defense of contributory negligence.

Congress passed FELA to enable railroad employees to secure compensation for injuries on the job. 45 U.S.C. § 51. The employee must prove that the railroad was negligent, but is not required to prove proximate cause. Rather, the railroad employer is liable if its negligence played a part, however, small in causing the injury. CSX Transp., Inc., v. McBride, __ U.S.__, 131 S.Ct. 2630, 2636 (2011). Furthermore, a violation of an applicable safety statute, or any safety regulation promulgated under such statute, constitutes negligence per se. Coffey, 479 F.3d at 477.

Congress also authorized railroad employers to assert contributory negligence as a defense in certain circumstances. 45 U.S.C. § 53. The statutory contributory negligence defense does not provide a complete defense to the railroad employer; rather, the defense provides that, "the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." Id. Congress added a proviso that employers may not raise the contributory negligence defense if the railroad employer violated a safety statute:

> *Provided,* That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any

> statute enacted for the safety of employees contributed to the injury or death of such employee.

Id. (emphasis in original).

The question becomes whether OSHA is a safety statute that should trigger the FELA principle of negligence per se and the proviso in FELA § 53. Congress provided that violations of OSHA would not affect the rights or obligations between employers and employees arising from workplace injuries:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

29 U.S.C. § 653(b)(4). A majority of the Circuit Courts of Appeals that have considered this issue have concluded that OSHA should not be considered a safety statute that triggers negligence per se and a prohibition of the contributory negligence defense under FELA. Jones, 155 F.3d at 596 (2$^d$ Cir.); Robertson, 32 F.3d at 410 (9th Cir.); Ries, 960 F.2d at 1164-65 (3$^d$ Cir.); Albrecht, 808 F.2d at 332-33 (4th Cir.). Only the First Circuit has ruled otherwise. Practico, 783 F.2d at 263.

After careful consideration, this Court agrees with the majority of the Circuit Courts of Appeals. Congress enacted FELA to protect railroad

employees, and its references to safety statutes relate to safety statutes intended to promote safety in the railroad industry. Congress enacted OSHA to provide broad safety standards for the entire economy; OSHA standards were not narrowly designed to apply only to the railroad industry. Congress also specifically stated that those broad safety standards should not affect the rights or obligations of employees and employers "with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4). This Court concludes that this Congressional policy set forth in OSHA § 653(b)(4) should control in the application of OSHA standards in all industries, including the railroad industry. Thus, a violation of OSHA regulations in a FELA case is not negligence per se and does not bar an employer from asserting a defense of contributory negligence. Johnson is not entitled to partial summary judgment.

WHEREFORE Plaintiff's Motion for Partial Summary Judgment (d/e 36) is DENIED.

ENTER:   January 30, 2014

                                                    *s/ Byron G. Cudmore*
                                                    UNITED STATES MAGISTRATE JUDGE